THE PEOPLE OF THE STATE OF NEW YORK ex rel. J. CARLTON WARD, Appellant, v. UPTOWN ASSOCIATION, Respondent.

*Expulsion of a member from a club — notice that a charge will be considered at a hearing before the board of directors — the proof may be made as broad as the notice — mandamus.*

A member of an association, incorporated under chapter 267 of the Laws of 1875 and subject to the provisions of the Membership Corporation Law (Chap. 559 of the Laws of 1895), issued a circular letter to the other members of the association, criticising the action of the board of directors in rejecting a person proposed for membership and suggesting that a special meeting of the members be called at which the by-laws might be so amended that the person rejected

could be elected to membership and "similar club mistakes" be prevented, and stating that the person proposed had been rejected by two blackballs.

The board of directors, which had, under the by-laws of the association, power to annul a membership for conduct likely "to endanger the welfare, interests or character of the association," sent a letter to the member, stating that upon a certain day it would hold a meeting to consider the matter of the circular "in its prejudicial bearing upon the interests of the club," and requesting him to be present at the meeting "to give such explanations as you may desire to make in justification of your action."

At the meeting, the president of the board, after calling upon the member to state why he had issued the circular, refused, against the objection of the member that such proceeding was not in accordance with the letter of notification to him to appear, to permit him to discuss the rejection of the proposed member, but confined the trial to the consideration of the statement in the circular that only two blackballs had been cast against the person proposed for membership, which was charged to be a false statement, and subsequently the board expelled the member.

Upon an appeal from an order dismissing an alternative writ of mandamus issued to review this action of the board of directors, it was

*Held,* that the relator was entitled, under the letter of notification, to discuss the rejection of the proposed member as being one of his reasons for issuing the circular, and also to show as another of such reasons that the clerk of the club had informed him that only two blackballs had been cast upon such rejection;

That, under the circumstances, the relator was entitled on the trial of the issues in the mandamus proceeding to have submitted to the jury the question whether he had been given reasonable notice to defend himself upon the charge upon which he was expelled, *i. e.*, of making a willful or reckless misstatement in the circular.

APPEAL by the relator, J. Carlton Ward, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of June, 1897, dismissing an alternative writ of mandamus, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 25th day of May, 1897, granting the defendant costs against the relator.

This appeal was transferred from the first department to the second department, as several of the justices of the Appellate Division of the first department were members of the Uptown Association.

*Elihu Root* [*Henry L. Stimson* with him on the brief], for the appellant.

*William H. Sage,* for the respondent.

PEOPLE ex rel. WARD v. UPTOWN ASSN.    299

App. Div.]    Second Department, February Term, 1898.

Goodrich, P. J.:

The relator in March, 1896, applied at Special Term for a writ of mandamus to compel the Uptown Association to reinstate him as one of its members.   The application was denied, but on appeal the Appellate Division of this department, to which the appeal had been transferred, reversed the order of the Special Term and directed the issuance of an alternative writ of mandamus (9 App. Div. 191).   This writ was issued and the issues arising under it came on for trial before the court and a jury in May, 1897, and resulted in the direction of a verdict for the defendant, and from the final order dismissing the writ the relator appeals.

The Uptown Association is a membership corporation in the borough of Manhattan, organized under chapter 267 of the Laws of 1875, and governed in its action by the Membership Corporation Law (Chap. 559, Laws of 1895).   The by-laws provide as follows : " Section 1. The Board of Directors shall have charge and supreme control of all the affairs of, and of every committee of, the Association ; it shall ballot for all candidates for admission to membership, and shall serve as a Court of Appeal before which all questions and differences affecting the interests of the Association may be laid, subject to its final decision."

On November 13, 1895, Mr. Bristol, another member of the association, proposed, and the relator seconded, the nomination of Mr. Siegel for membership in the club.   On January 8, 1896, the board of directors by a vote of nine to one rejected the application of Mr. Siegel for admission.   On January sixteenth Ward and Bristol sent to the members of the club a circular, the material parts of which read as follows :

"New York, *January* 16, 1896.

" *To the Members of the Uptown Association :*

"Gentlemen.— The undersigned proposed and seconded Mr. Henry Siegel for membership in the Uptown Association on the 13th day of November, 1895.   Mr. Siegel was further seconded by Mr. Frank J. Sprague, Mr. Louis Auerbach, Mr. Marinus L. Vanderkloot and Mr. Elias Rothschild.   Mr. Siegel's name having remained on the bulletin board for an unusual length of time, we, on the 7th day of the present month addressed the following letter to a number of gentlemen upon the Board of Management :

300    PEOPLE ex rel. WARD v. UPTOWN ASSN.

SECOND DEPARTMENT, FEBRUARY TERM, 1898.        [Vol. 26.

" ' DEAR SIR.— As mover and seconder of Mr. Henry Siegel for membership of the Uptown Association, we respectfully protest against the great length of time his name has been posted upon the bulletin board of the club.    Understanding that Mr. Siegel has an enemy in your honorable board, who has declared that Mr. Siegel will not become a member of the Uptown Association, we have written to a few prominent people who we naturally thought knew Mr. Siegel, and stated the facts.    We have replies as follows, the original letters being at your disposal.    (Here follow excerpts from letters of several residents of Chicago commendatory of Mr. Siegel.) These 'recommendations,' which, from the action of your board, seem necessary for the best interests of the club, could be very greatly extended.    In conclusion, we do not think that the Uptown Association can longer afford to treat Mr. Siegel in the manner that it has, and we hope to be immediately advised of his election as a member of the club.    Yours very truly, Jno. I. D. Bristol, J. Carlton Ward.'

. " Under date of the 8th inst. we were informed by Mr. H. J. Park, secretary, that Mr. Siegel had not been elected.    We naturally look upon the whole proceeding of blackballing Mr. Siegel as a serious mistake, and as not by any means the expression of the wishes of the great majority of the club.    The only question that is paramount in this whole matter is whether Mr. Henry Siegel is a fit member for the Uptown Association.    In proposing Mr. Siegel we had in view his modest, genial and gentlemanly qualities; the fact of his being the leading member of the firm of Messrs. Siegel, Cooper & Co., whose three million dollar enterprise is now under way within a block or two of the club house, and that additional members of the standing and reputation of Mr. Siegel, who are pronounced factors in the development and growth of the Greater New York, are to-day the great need of the Uptown Association as a successful club.    The immediate rectification of the ill-advised act of blackballing Mr. Siegel should appeal, we believe, to the sense of right of our brother members, and we now seek for advice and counsel in this matter, and hope to receive from you an immediate reply.    We are of the opinion that a call for a special meeting of the club, as provided in Article XXIII of the by-laws, should be immediately sent out, and that at this meeting the neces-

sary amendments to the by-laws be made in order that Mr. Siegel can be elected to membership as soon as possible, and similar club mistakes, in so far as the Uptown Association is concerned, be things of the past. In this connection, and in view of the forthcoming annual meeting and election of the club, it might also be borne in mind that but two blackballs rejected Mr. Siegel, and that the circumstances under which those balls were cast should be carefully considered by all the club members.

" Very truly yours,

" JNO. I. D. BRISTOL.

" J. CARLTON WARD."

Bristol also made an entry in the proposal book which reads : " Mr. Siegel was blackballed Jan'y 8th, 1896. Don't buy his crockery from a certain man."

Another section of the by-laws reads as follows :

" Sec. 4. The board shall have power, by a vote of at least nine of its members, to annul the membership of any member of the Association for any conduct on his part which, in their judgment, may be likely to endanger the welfare, interests or character of the Association."

In the exercise of this power the board, on January twenty-second, sent the following letter to the relator :

" DEAR SIR.— The Board of Directors has under consideration the circular letter issued by you in regard to the rejection of Mr. Siegel as a member of this club. There will be an adjourned meeting of this board on Wednesday, the 29th inst., at 2 o'clock, to consider this matter in its prejudicial bearing upon the interests of the club. You are requested to be present at this meeting to give such explanations as you may desire to make in justification of your action.

" Very respectfully,

" HOBART J. PARK, *Sec'y.*"

A similar letter was sent to Bristol, which contained an additional charge as to the entry in the proposal book. On the twenty-ninth day of January, the day named in the letter, Ward and Bristol appeared before the board, and there is considerable divergence of testimony as to what occurred at that time. The relator testified

302    PEOPLE ex rel. WARD v. UPTOWN ASSN.

Second Department, February Term, 1898.    [Vol. 26.

that Mr. Sloane, the president, said: "We consider this circular prejudicial to the best interests of this association, and some of the statements in that circular are untrue. You are expected and will be given an opportunity to make such explanation as you see fit to make as to why you issued that circular;" that he did not point out that the false statement contained in the circular was that Siegel was rejected by only two blackballs; that then, turning to Bristol, he said: "You are called here likewise to answer the same charge, with an additional reason why you have written something in one of the books of the club;" that he, Ward, arose and commenced to read from a paper which is not in evidence, but which commenced with the following words: "At the outset I want to say the one thing paramount in my mind has been the thought what is for the best interests of this association. This statement seems necessary from the wording of the letter requesting my attendance here to-day. Now, to go back, and in reviewing my course I want to say,"—— that at this point he was interrupted by one of the board, who said: "We simply wanted to know why you issued that circular. We don't care to review anything else. We are not here to discuss the merits of the election or rejection of Mr. Siegel, but the question is simply, why did you issue that circular?" that thereupon he took his seat, and Bristol arose and said that they were busy men and the only way to interview the members was to issue a circular and get from them an expression of opinion so that there could be a special call to amend the by-laws, when this mistake of blackballing Mr. Siegel could be rectified; that they asked to have put upon the minutes of the meeting that they objected to such proceeding; that it was not in accordance with the invitation, and that they could not discuss why they issued the circular without bringing in the name of Mr. Siegel, and when the directors refused to hear them on this subject that they asked to have an adjournment of the hearing to enable them to prepare a defense in line with the by-laws.

On the other hand, several of the directors were examined as witnesses, and testified that the president stated to Ward and Bristol that they were cited to answer for the issuing of the circular which contained matters prejudicial to the interests of the club, false statements concerning the matters of the club, and as to certain

PEOPLE ex rel. WARD v. UPTOWN ASSN. 303

App. Div.]     Second Department, February Term, 1898.

writing in the proposal book on the part of Mr. Bristol; that when Ward was interrupted he said : " Well, if I cannot go into Mr. Siegel's rejection I have nothing further to say — without going into the matter of Mr. Siegel's rejection." After the two men retired, the board, by the unanimous vote of the fourteen members present, expelled them from membership in the club.

At the close of the testimony at the trial the relator asked that the following questions be submitted to the jury : " *First.* Did the relator have reasonable notice to defend himself upon the charge of making a willful or reckless misstatement in the circular of January, 1896 ? *Second.* Was the relator expelled upon that charge ? *Third.* Was such a charge established ? *Fourth.* Did the relator have a fair and reasonable opportunity for explanation and defense upon the charges against him ? "

The court directed the jury to find a verdict for the defendant : " That the relator had sufficient notice of the charge against him, and sufficient opportunity to be heard in his defense, and that the Board of Directors, in expelling him, had cause for the expulsion decreed," to which the relator excepted.

On the previous appeal in this case (9 App. Div. 191) the court held : " We think that the relator had the clearest and most undeniable right to appeal to his fellow-members either to alter the by-laws or to change the personnel of board of directors; that for this purpose he had the right to state any material fact; and to fairly criticise any action of the governing authorities of the club. It may be unfortunate that there should be a difference of opinion or disputes in club management, but dissension is a hazard to which all associate action is liable, and clubs no more than other organizations can expect to be exempt from this hazard. Of course, the relator had no right to make any misstatement of fact or cast unfounded aspersions on the directors or his fellow-members. * * * The opposing affidavit states that in fact nine ballots were cast against the candidate instead of two. If the relator knowingly published a false statement on this subject, or even recklessly made one without seeking to ascertain whether it was true or false, such conduct would be a sufficient ground for action by the board of directors. But the notification to appear before the directors seems to indicate as the relator's offense his appeal to his fellow-members, and not

any false statement or unfair criticism made in that appeal. · This, as we have said, could not of itself be an offense." The court also stated that on the return to the writ it could " be determined what the proceedings against the relator were, what was the charge against · him, and what he was tried for.".

It will thus be seen that the purpose of the alternative writ directed on the former appeal was to determine on the trial: *First*, what was the charge against him ?   *Second*, what were the proceedings against the relator ?    *Third*, for what was he tried ?   And these subjects we shall consider in their order.

*First.* What was the charge against the relator ?   This must be derived, we think, solely from the directors'. letter of January twenty-second, in which they stated that the board had under consideration the circular letter issued by him, and its prejudicial bearing upon the interests of the club.

*Second.* What were the proceedings against the relator ?   The directors had the power, under the by-law above quoted, to expel a member " for any conduct on his part which in their judgment may be likely to endanger the welfare, interests or character of the association," and this was also the limitation of their power.   They indicated the purpose and intention of the hearing, when, in the notice of January twenty-second, they said that the matter under consideration was the issuance of the circular.   The directors would have been acting within their power if they had summoned the relator for trial on any matter contained in the circular, and if there had been fair notice given of the object of the trial, their proceedings in this respect would have been regular and authorized.

It is evident, however, from the testimony of the defendant's witnesses that the board intended to, and did, confine the trial simply to the false statement in the circular, without permitting the relator to make any explanation as to his reasons for issuing the circular. The relator was called upon by the president of the board " to make such explanation as you see fit to make as to why you issued that circular." · The relator was proceeding to give such explanation when he was summarily stopped and prevented from giving his reasons why he issued the circular.   It makes no difference that, to the minds of the directors, his reasons might not have been relevant or sufficient.   The " why," was what he was directed to give, and was

attempting to give, and he had a clear right to give the " why."
The matter which the directors had under consideration was stated
by the president to be that the issuance of the circular was " preju-
dicial to the best interests of this association," and the relator was
then informed that he was then to have an opportunity to make such
explanation as he saw fit why he had issued the circular. A new
and very important piece of evidence in relation to this subject
appears in the present record, viz., that the relator and Bristol, who
were acting together before the directors, asked that there should
be entered on the minutes of the meeting the fact that they objected
to this proceeding as it was not in accordance with the letter of the
directors, and claimed that they could not discuss the reasons why
they issued the circular without bringing in the name of Mr. Siegel.
It does not appear by the record whether or not this request was
complied with. This changes altogether the condition present in the
former appeal, where this court said that it appeared that the relator
made no complaint that the charge was not definite, and that, conse-
quently, he could not raise that question on appeal. The contrary
now appears.

We think that the witness was improperly and unjustly prevented
from giving the reasons, and all the reasons, which operated on his
mind for issuing the circular, and if one of these reasons was that
Mr. Siegel was improperly or unfairly rejected from membership,
he should have been heard in his defense. If the directors had, in
their letter, limited their charge against the relator to the false state-
ment at the end of the circular, as to the number of blackballs cast,
and had seen fit to give the relator opportunity to be heard on that
matter alone, they might have excluded all other matters, but the
door was opened widely both by the letter and the statement of the
president. The refusal to permit the relator to state his reasons was
not in accordance with the letter, and he should have been permit-
ted to state his opinion as to the rejection of Mr. Siegel. When he
was stopped he said that if he could not go into the matter of Mr.
Siegel's rejection he had nothing further to say.; without going into
the matter of Siegel's rejection he had nothing to say. But it would
seem as if he had the right to explain that the reason why he had
issued the circular was the very subject embraced and stated in the.

circular, and to give any other reasons for issuing it, as he had been summoned to give these reasons and was trying to explain them. It may not be assumed that the directors alone of all members had the best interests of the club at heart. It may be assumed that private members were as much interested as the directors in the welfare of the club. The office of director confers certain responsibilities of management and control upon such officers, but they are, after all, only representatives of their associates. Their action is subject to fair criticism by any associate. Suppose, for instance, that the relator intended to state, as we may infer from his circular and the beginning of the statement which he commenced to read, that he intended to say that one of his reasons for issuing the circular letter was to call a special meeting of the members to amend the by-laws in such a way that members at large, instead of the directors, should vote upon the admission of new members, was not that a reason to be given why the relator had issued the circular? Had he no right to explain this, and to give as one of the reasons which had induced him to issue the circular that an apparent injustice to a person proposed for membership might be repeated in the cases of other applicants, as he claimed had been done in Seigel's case, and that such injustice could be prevented by a vote of all the members?

*Third.* What the relator was tried for. From the foregoing remarks it is evident that the sole matter upon which the relator was tried and expelled was the false statement in this circular, that Mr. Siegel was rejected by only two blackballs, and that the circumstances under which the balls were cast should have been carefully considered by the committee.

The directors addressed the relator a letter after the trial, in which it was stated that the board, acting under section 4 of the by-laws already quoted, had annulled his membership, and a reference to this section shows that it relates to conduct on his part which, in the judgment of the board, might be likely to endanger the welfare, interests or character of the association. But the particular action of the relator which thus endangered the welfare of the association was not specified.

The relator's first request to submit to the jury the question whether he had reasonable notice to defend himself upon the charge of making a willful or reckless misstatement in his circular would

PEOPLE ex rel. WARD *v.* UPTOWN ASSN. 307

App. Div.] Second Department, February Term, 1898.

be disposed of by our former opinion, in which it was said: "But the notification to appear before the directors seems to indicate as the relator's offense his appeal to his fellow-members, and not any false statement or unfair criticism made in that appeal. This, as we have said, could not of itself be an offense. * * * The relator appeared before the board, and seems to have no complaint that the charge was not definite. Therefore, he cannot now raise that objection." But it now appears by the record that he did not assent to the limitation of the inquiry to the giving of the reasons why he issued the circular, but claimed the right to be heard in accordance with the notice contained in the letter of the directors, and this evidence required a submission of the question as to reasonable notice to the jury.

As to the second request, whether the relator was expelled upon that charge, we think there was sufficient evidence to justify the direction of a finding that the relator was tried by the board upon the charge of making a willful or reckless misstatement in the circular.

The third and fourth requests to submit the questions whether the charge was established before the board and whether the relator had a fair and reasonable opportunity for explanation and defense upon the charges against him, are so closely allied that they must be considered together. We are not called upon to express any opinion as to the action of the relator in sending out the circular and making the false statement as to the blackballs, therein contained, but there was evidence tending to show that Mr. Johnson, the clerk of the club, had informed the relator and Bristol that only two blackballs were cast against Mr. Siegel. He was entitled to give this as one of his reasons for issuing the circular; but the relator's line of defense was demolished by the vigorous ruling that he could not be permitted to discuss the rejection of Mr. Siegel, whereupon he asked for an adjournment of the proceedings for a few days, so that he could come in and make a "defense in line with the by-laws of the association," and this was refused by the board.

Upon the last two questions there was evidence of such a conflicting character as to require the submission of both questions to the jury, and the refusal of the learned court to do so was reversible error.

The order appealed from must be reversed, with costs to abide the event.

All concurred, except BARTLETT, J., not sitting.

Final order reversed and new trial granted, costs to abide the event.